THOMPSON, J.
 

 This is a suit to recover from the defendants, and
 
 to
 
 compel them to execute title to, an undivided one-sixth inter-, ‘est in certain lands situated in what is known as the Marie Ximenes league, in Hardin county, Tex.
 

 The particular lands in which the interest is claimed by the plaintiff are fully and accurately described in the petition.
 

 A demand is also made for an accounting of all funds received by the two defendants and by their deceased brother and sister, Prank D. and Marie Ogden, from said lands .since November 9, 1915, by way of royalties for oil or other minerals, or bonuses, or rentals under leases or otherwise, or resulting from sale of timber or other products from the said land.
 

 The plaintiff’s claim and right of ownership arises from, and is based on, the following facts:
 

 In 1901 or 1902 the plaintiff’s father, Harry Da Ponte, informed ;the Ogden heirs that they were entitled to certain lands in Texas by inheritance from one Charles Gardner, deceased, and tendered his services in the recovery of said lands for them, offering to put up all of the money necessary, and to engage the services of counsel for a fee of one-half of the land recovered.
 

 The matter was referred to. Mr. W. S. Parkerson, an attorney of this city, and a power of attorney was executed by all of the Ogden heirs, authorizing and empowering the said Parkerson to grant, bargain, sell, and convey or release at such price, or for such other considerations as to him may seem best, any of the interest owned by the said Ogdens in the lands referred to.
 

 To compromise and adjust upon such terms, and for such considerations as he may deem just, the claims of said heirs to any part of said lands, and generally to make, acknowledge, and deliver such deeds of conveyances, transfers, and releases as he may deem necessary and proper.
 

 
 *381
 
 The power of attorney concludes with the following statement:
 

 “And we further authorize and empower our said attorney in fact, W. S. Parkerson, to' make conveyance of a one-half interest in the land herein referred to to the attorneys and other parties who have represented us in proseuting our claim to said land, said conveyance to be made by him whenever in his judgment it is' deemed proper and expedient.”
 

 Acting under this power of attorney, Mr. Parkerson engaged the services of Mr. Da Ponte, who employed Mr. Mayer, an attorney at Galveston, agreeing to give him one-half of the half which Da Ponte was to get.
 

 Later, another attorney, one Minor of Beaumont, was employed to assist Mayer, and the three," Mayer, Minor, and Da Ponte, were to share equally in the one-half of the land recovered.
 

 It was agreed that Da Ponte should advance all the money necessary for the costs and expenses incident and necessary to the recovery of the lands.
 

 After considerable litigation covering a period of some four or five years, some 500 or 600 acres of land were reclaimed for the Ogden heirs.
 

 The expense incurred by Da Ponte amounted to something over $4,000, in addition to the time which he gave to the matter and the trouble which he had in locating and selecting the lands.
 

 After the litigation had terminated and the title to the lands had been cleared, it was proposed that an amicable partition should be effected by which the interests of Mayer and Minor should be separated from that of the Ogden heirs and Da Ponte; that is to say, certain of the lands were to be set aside to Mayer and Minor in indivisión and other lands to the Ogden heirs and Da Ponte in indivisión.
 

 Accordingly, and for this purpose, a meeting was held in Beaumont in June, 1905, which was attended by Mayer, Minor, Da Ponte, and' by Parkerson representing the Ogden heirs. A' controversy arose. at this meeting between Mayer and Da Ponte as to' the proportion of the lands which the latter was to receive. Mayer insisted that Da Ponte had not lived up to his agreement, while Da Ponte claimed that he had done all that he had agreed t'o do, and all that was' required of him, and he demanded that his interest in the lands as previously agreed on be recognized and awarded to him, and stated that, if this was not done, he would refuse to consent to any partition of any of the lands.
 

 In order to effect the partition at that time,'and to secure to the Ogden heirs the lands to which they were entitled, and to avoid any future litigation and delay in the matter, Mr. Parkerson agreed on behalf of his principals that, if Da Ponte would surrender his claim against' Mayer to a share in that portion of said lands in which Mayer refused to allow him any interest, and would, in addition, assist the said Parkerson in selecting for the Ogden heirs the portions of said land which should fall to them in the proposed partition, he (the said Parkerson), in behalf of the Ogden heirs, would thereafter transfer to Da Ponte a one-sixth interest in that portion of said lands which should be awarded to said heirs. This was agreed to by Da Ponte, and the partition was effected.
 

 It appears that there were two partition judgments rendered by the Texas court relating to different portions of the lands. The first judgment recognized the interest of Da Ponte as one-sixth in some 375 acres. The second judgment involved some 20 acres, and did not recognize the interest of Da Ponte, which Parkerson had agreed to. give him in consideration of his withdrawing his opposition to the partition.
 

 After the meeting at Beaumont previously referred to, Parkerson wrote to Miss Marie Ogden under date of August 1,. 1905. as fol- . lows: • ■ '
 

 
 *383
 
 “The assistance of Da Ponte in the partition of the lands was not only of the greatest value, but, owing to his perfect knowledge of the ground, was absolutely indispensable, and, sooner than have the partition fall through, I agreed to allow him one-sixth of our recoveries under the second judgment, the acreage involved is trifling, and the town lots of no present value.”
 

 On November 19,1908, Mr. Parkerson wrote to Da Ponte as follows:
 

 “Confirming our conversation of 18th inst., I hereby acknowledge that you are the owner of a one-sixth undivided interest in sundry tracts of land in Hardin county, Tex., which were recovered from various defendants by Marie Ogden et al., by judgment rendered in county court of Galveston county, Tex.
 

 “I will make deed to your interest in these lands as soon as I can hear from Mr. H. 0. Mayer of Galveston, to whom I shall bo obliged to write for an exact description of the various tracts and numbers of lots in the Saratogo town site and date of judgment.
 

 “Trusting the above will be satisfactory until I can secure data for formal deed.”
 

 And again, on November 20,1908, Mr. Parkerson wrote to Da Ponte as follows:
 

 “Confirming phone conversation this a. m. I have neither executed deed to my interest in Ogden recoveries or recorded my contract.
 

 “Miss Ogden is fully informed as to your interest under my agreement with you.” „
 

 And again, under date of July 26, 1913, Parkerson wrote Da Ponte:
 

 “I send abstract from the decree of partition giving detailed description of the various tracts in which your interest is not already defined.
 

 “I will make you deed to your sixth interest on my return to the city for the winter.”
 

 On August 7, 1913, Da Ponte wrote to Parkerson as follows:
 

 “Found your letter and copy of judgment on my return from the country to-day, which accounts for my not acknowledging receipt as requested. The description of these little pieces is correct, and embodies all the pieces which yet remain undivided.
 

 “I note that you will make deed on your return to town for the winter, which will be satisfactory to me.”
 

 No formal deed was ever executed by Parkerson to Da Ponte. Parkerson, however, continued to act as agent for the Ogden heirs up till' his death in 1915.
 

 ' For a period of some seven or eight years Parkerson collected oil royalties and proceeds of timber sales from the lands embraced in both judgments, and paid one-sixth thereof to Da Ponte, with the full knowledge, acquiescence, and approval of the Ogden heirs.
 

 After Parkerson’s death, his son, also an attorney, represented the Ogden heirs, and collected the royalties and paid one-sixth of the amount so collected
 
 to
 
 Da Ponte just as his father had done. These payments were also made with full knowledge on the part of Miss Marie Ogden, who acted as spokesman and representative of the other heirs, until November, 1915, when she notified Mr. Sterlington Parkerson to make no further payments to Da Ponte of royalties from the .lands now in dispute.
 

 This request was complied with, and the royalties from these lands from November, 1915, to April, 1916, were not paid either to Da Ponte or the Ogden heirs, but were deposited in the registry of the court in a concursus proceeding provoked by Parkerson.
 

 Beginning with April, 1916, Miss Marie Ogden took over the collection and distribution of the royalties.
 

 It might be well to state here that the elder Harry Da Ponte, by dation en paiement, conveyed his interest in the lands and all rights thereto pertaining to his wife, Mrs. Mary Moles Da Ponte, on March 27, 1917, and on December 27, 1918, Mrs. Da Ponte sold the same to the plaintiff herein.
 

 ' The present suit was filed February 14, 1921.
 

 On a trial of the case, judgment was rendered in favor of the plaintiff for the one-sixth interest in the lands described and ordering the defendants to execute title to 'the same. The defendants were also ordered to render an account of all the funds received
 
 *385
 
 by them and by their deceased brother and sister Frank D. and Marie Ogden from said lands since November 9, 1915, and up to the date of final judgment, and to pay the plaintiff the one-sixth of the amounts so received after deducting all sums spent for taxes or other necessary and proper expenses for the preservation and development of said property.
 

 There is no room for doubt in our opinion that Mr. Parkerson, as agent for the Ogden heirs, agreed to let Da Ponte have a one-sixth interest in the lands recovered by the heirs and allotted to them in the second judgment of partition rendered by the Texas court.
 

 Nor can there be any doubt that the letters from Parkerson to Da Ponte evidenced a complete recognition of ownership of the said interest in said lands and a definite promise to Parkerson to make a deed thereto.
 

 The final reply of Da Ponte to Parkerson under date of August 7, 1913, likewise evidenced an acceptance on the part of Da Ponte.
 

 We do not understand that this conclusion is seriously disputed by the defendants.
 

 It is contended by the defendants that Parkerson was only empowered to convey a one-half interest in the lands recovered, and, when that one-half interest was granted to Da Ponte, the authority of Parkerson under the power of attorney was exhausted, and that his agreement to give Da Ponte the one-sixth of the lands coming to the heirs in the second partition judgment was ultra vires the power of attorney, was a mere gratuity, and not binding on the heirs.
 

 The Ogden heirs were not parties to the agreement between Da Ponte, Mayer, and Minor. It is not disputed that under that agreement Da Ponte’s interest was reduced from a one-half to a one-sixth. It is not quite clear under the evidence that the one-sixth interest awarded to Da Ponte in the first partition judgment and the interest awarded Mayer and Minor equalled the one-I half of all the recoveries including the small acreage in controversy.
 

 However, it may be assumed that the one-half interest was fully satisfied in the two partition judgments, since it is conceded that the agreement of Parkerson sought to be enforced was independent of, and supplemental to, the original agreement, and without which Da Ponte would have no interest in the lands embraced in the second judgment.
 

 Based on this assumption, there is much force in the contention that Parkerson ex-* ceeded his authority in making the second agreement with Da Ponte.
 

 While the power of attorney is very broad and comprehensive in its scope, yet the latter clause can hardly be construed otherwise than as limiting the agent in disposing of the lands to a one-half interest in the acreage recovered for the heirs.
 

 In other words, while the agent was authorized to make all such compromises, grants, and conveyances which in his judgment were necessary and in the interest of his principals in recovering the lands, he was not authorized to grant or to convey for that purpose more than a one-half interest. The. power of attorney manifestly did not authorize the agent even for an adequate additional consideration to convey a one-sixth interest of the portion of lands recovered and allotted to the Ogden heirs.
 

 If the case rested there, we would feel constrained to hold with the defendants that the sale in controversy was unauthorized.
 

 The good faith of Parkerson is inot questioned. That he acted for what he believed to be for the best interest of his principals, we think, is not open to controversy. He immediately informed the heirs in writing of the agreement he had made with Da Ponte — the circumstances under which it was made, and why he had made it.
 

 There was not the slightest objection or protest on the part of the heirs. On the con
 
 *387
 
 trary, the heirs expressly ratified this agreement by continuing Parkerson as their agent in looking 'after their interest in the lands and allowing him to pay over to Da Ponte the one-sixth of the royalties from the particular lands from the time the said royalties began to come in until Parkerson’s death in the early part of 1915.
 

 And thereafter the said heirs not only permitted Sterlington Parkerson to make the payments to Da Ponte as his father h'ad done, but Miss Marie Ogden expressly authorized the said payments to co'ntinue to be made.
 

 The first time any objection was made to such payments was some time after the death of the elder Parkerson. This objection seems to have had for its basis the fact that the interest of Da Ponte had not been mentioned or recognized in the second judgment of partition.
 

 The heirs ignored entirely the fact of the agreement which had been made between Parkerson and Da Ponte under which the payments were made, and they did not at that time claim that Parkerson was without authority to make the agreement.
 

 It is not unfair to assume that, if Mr. Parkerson had not died, a deed for the lands would have been made to Da Ponte and no question of want of authority of the agent would ever have been raised.
 

 There' is no principle of law and jurisprudence better settled and more uniformly adhered to than tiie one to the effect that the acts of an agent, even if unauthorized and without the scope of his mandate, or in violation of the mandate, are regarded and considered as ratified by the principal by acquiescence, if, after full knowledge of the same, he does not repudiate them.
 

 In Pitts v. Shubert, 11 La. 286, 30 Am. Dec. 718, the court said:
 

 “It appears .to us that if the' plaintiff intended to disavow the sale by Poster, he ought tó have done so immediately on his arrival. He might' not' to have played fast and loose, and induced' the defendant to forego the immediate pursuit of Poster; No principle is better settled than that he who is notified that a contract has been made for him and subject to his ratification, by a person who pretended to have authority for that purpose, is presumed to ratify it, unless immediately on being informed thereof, he repudiates it.”
 

 And in Ward v. Warfield, 3 La. Ann. 468, the court said:
 

 “But subsequent assent, as between principal and agent', is equivalent to a previous authority; hence where an agent has committed a breach of orders, and the principal with full knowledge of all the circumstances, adopts his acts, even for a moment, he will be bound by them, and the agent discharged. Such assent need not be express; it may be inferred from the conduct of the principal.”
 

 See, also, Lafitte Dufilho & Co. v. Godchaux, 35 La. Ann. 1161; Allison & Co. v. Watson, 36 La. Ann. 616; Raymond v. Palmer, 41 La. Ann. 425, 6 So. 692, 17 Am. St. Rep. 398.
 

 If the heirs were not satisfied with the action of their agent, and they felt that it was unauthorized and against their interest, they should have immediately repudiated it, and so informed their agent and Da Ponte. Not having protested at a time when they were called on to do so, but having acquiesced therein with full knowledge of the agreement and all of the circumstances under which it was made, they must be held to have ratified the same.
 

 Another contention of defendants is that the agreement between Parkerson and Da Ponte was not evidenced by writing, and that the' said agreement could not be established by oral evidence; and, further, that the letters offered in evidence were not with'in themselves sufficient to prove the agreement, and that the deficiencies especially as to consideration for the agreement could not be supplied or “eked out” by other than written evidence.
 

 Our opinion is that the letters of Parker-son to Da Ponte and the reply of Da Ponte
 
 *389
 
 evidences a definite agreement on the part of Parkerson to make the sale and an acceptance on the part of Da Ponte. The parol evidence went no further, or at least was only necessary to show the existence and nature of the consideration of the agreement to sell and to buy. Por this purpose the said parol evidence was admissible.
 

 Moreover, the letter of Parkerson to Miss Ogden immediately after the agreement fully disclosed to her the consideration which induced him to make the agreement. It will not do to say, therefore, that the consideration was entirely unsupported by written evidence. Under the circumstances stated parol evidence was admissible supplemental to the written acknowledgment of the consideration and also to identify the land the subject of the agreement.
 

 In the case of Linkswiler v. Hoffman, 109 La. 954, 34 So. 36, the court said:
 

 “It was competent to show by parol, under the allegations of both the petition and answer, what the other considerations were, what the moving cause for making the conveyance was. what the incumbrances resting on the land were.”
 

 In the case of Cousin v. Schmidt, 143 La. 850, 79 So. 430, the court said:
 

 “We agree with the learned Court of Appeals that the receipts afford written evidence of the sale, though incomplete, and that parol evidence would be admissible to establish the identity of the land and the total of the agreed price. * * * ”
 

 In the instant case there was written evidence acknowledging the agreement to convey the interest in the land to Da Ponte and a definite promise in writing to make the deed.
 

 There was a written acceptance on the part of Da Ponte. The consideration for this agreement- was expressly stated in the letter of Parkerson to Miss Ogden. In these circumstances parol evidence was admissible for the purpose of supplementing the written evidence and to show the full and real consideration for the agreement.
 

 That consideration, we think, was adequate and sufficient to support the agreement to sell.
 

 The parties had met for the express purpose of a partition.
 

 A controversy arose as to the extent in which Da Ponte was to share in the property.
 

 A situation was presented which was calculated to delay the partition, involve future litigation, and to jeopardize the interest of the Ogden heirs. The services of Da Ponte had been of great value to the heirs in locating and selecting the lands for them. These services were recognized by Parkerson as of inestimable benefit to his principals, and he so advised them.
 

 The lands at the time were trifling in acreage and of little value. The agreement made avoided future litigation and delay,-foreclosed the controversy, and enabled the partition to be effected. Had the heirs been present in person, they would have, no doubt, accepted the advice and counsel of their agent, and would have entered into the same contract with Da Ponte. In the light of this record they would have been fully warranted in doing so. Their long acquiescence and silence now precludes them from assailing the agreement as being lacking in a sufficient consideration and their agent lacking in authority to make the agreement.
 

 The final defense to the suit is a plea of prescription of ten years filed in this court.
 

 This plea is based on article 3544 of the Civil Code, which establishes a prescription of ten years for all personal actions in general.
 

 In our opinion, the pleaded prescription is not applicable.
 

 The error on which the plea is founded is
 
 *391
 
 in assuming that this is wholly and exclusive- • ly a personal action.
 

 The action is a mixed action. It partakes in its nature the character of both a real and a personal action.
 

 It is a real action in so far as it seeks to recover an undivided interest in the lands and to compel defendants to execute title. It is personal in so far as it calls on defendants to account for and pay over one-sixth of the royalties received from said land.
 

 Article 3548, Civil Code, provides that all actions for immovable property are prescribed by 30 years. The case clearly falls within the terms of this article of the Code. The purpose of the action is to recover an interest in an immovable, based on an agreement to sell, and to compel defendants to comply with that agreement by the execution of a deed. It is apparent, therefore, that that part of the demand is a real, and in no sense a personal, action.
 

 The demand for the return of money had and received is in the strict sense a personal action, subject to the prescription of 10 years. The demand, however, is well within the prescriptive period, since an accounting and payment is only claimed from November 9, 1915, and this suit was filed February 14, 1921.
 

 The plaintiff has answered the appeal, and prays for legal interest on the amounts due by the defendants from the respective dates at which such'amounts were received by defendants and for which they are held to account. The judgment should be amended in this respect.
 

 It is therefore ordered that the judgment be amended by allowing plaintiff legal interest on tbe amounts received to date from the time each amount was received, and, as thus amended, said judgment is affirmed, at the
 
 cost
 
 of defendants.
 

 ROGERS, J., recused.