HAMITER, Justice
 

 (concurring).
 

 The principal issue herein, which is whether or not a mineral royalty is a servitude such as would render applicable the provisions of Civil Code, Article 802, has been properly determined, in my opinion, on the authority of Vincent et al. v. Bullock et al., 192 La. 1, 187 So. 35, the decision in which was and is unquestionably correct. My views, however, are not wholly in accord with the reasons assigned for the decision in the Vincent case.
 

 I agree that a mineral royalty, whether sold or reserved, is not a servitude. The mineral servitude is a right in the land, constituting a part of the ownership itself. It is a jus in re. The owner of that right has the privilege of going upon the property for the purpose of exploring for the minerals. Furthermore, he is a necessary party in the execution of any lease thereon and is entitled to receive (unless specifi-cal-ly waived) a proportionate -share of the bonus and the delay rentals paid under the lease. The mineral royalty, on the other hand, is only a right attached to the ownership of the land; it forms no part of the thing itself. It is a jus ad rem. The owner of the mineral royalty, whose role is entirely passive, has no privilege of ingress or egress to the land, and, hence, cannot • produce the minerals. Furthermore, his consent for the execution of a lease is not required,nor is he entitled to participate in the bonus or the delay rentals that may be paid under its terms. The right that he has is but an appendage of the right of the mineral owner, and is merely one to share in the production of oil, gas and other minerals if and when they are produced.
 

 Also, I agree that a mineral royalty (not a rent royalty restricted to a particular lease) is a real obligation or right in favor of the person acquiring it, his heirs or assigns. Obligations of this kind, imposed on the land by the owner thereof, are authorized by Civil Code, Article 2015.
 

 But I do not agree with the conclusion in the Vincent case that a mineral royalty is an obligation dependent on a suspensive condition within the meaning and intendment of Civil Code, Articles 2013, 2021 and 2038. If it were such an obligation, the operation of the contract, according to the very provisions of those articles, would b.e suspended until the occurrence of the event upon which it is conditioned (the production of minerals) ; and, hence, the applicable liberative prescription would commence to run only from that time. , .
 

 
 *313
 
 A mineral royalty, in my opinion, constitutes merely the sale of a hope as authorized and contemplated by Civil Code, Article 2451 which reads: “It also happens sometimes that an uncertain hope is sold; as the fisher sells a haul of his net before he throws it; and, although he should catch nothing, the sale still exists, because it was the hope that was sold, together with the right to have what might be caught.”
 

 An excellent treatise on that article is contained in 15 Tulane Law Review, 531. Therein the author, after quoting the codal provision, comments in part:
 

 “The sale of a hope had its origin in the Roman law. . In the sale of future goods, Roman law distinguished between emptio spei and emptio rei speratae. The difference between the two contracts was basic, and a discussion of each will conduce to a better understanding of the sale of a hope. The emptio rei speratae was the sale of a thing conditioned upon its coming into existence; whereas the emptio spei was the sale of a hope. If the contract were emptio rei speratae, neither party was bound until the subject of the sale came into existence. It was analogous to the common-law ‘agreement to sell,’ in which there is no binding sale until the subject of the sale is produced. In the emptio spei, or sale of a hope, the purchaser was liable for the purchase price even if the seller did not produce the thing which was the object of the hope.. The theory underlying this transaction was that the seller sold to the buyer the hope that the former had of acquiring the thing.
 

 “The next inquiry to be made is into the mode of interpretation, that is, what factors determined whether a contract was a sale of a hope or an emptio rei speratae. It was agreed universally that the intention of the parties was to govern. But, since the intention of the parties was not always clear, the Roman law indulged in presumptions of intention. Where the contract was for the sale of things having a potential existence, i. e., things which might be expected in the ordinary course of events to come into existence, the contract was presumed to be emptio rei speratae. Classic examples of such things were future crops and the
 
 young
 
 of slaves and of animals. On the other hand, where the contract was for the sale of things which did not have a potential existence, as, for example, the cast of a net, it was presumed that the parties intended to enter into a sale of a hope. This fundamentum divisionis of potentiality of existence was not conclusive of intention. It only raised a presumption, which always yielded to a clear indication that the parties intended the contrary.
 

 “The distinction between emptio spei and emptio rei speratae was not at all arbitrary. It was presumed that when a person bought a thing which would in the ordinary course of events come into existence, he did not assume the risk of its not becoming existent. Therefore, if it were not produced, he was not liable. On the other
 
 *314
 
 hand, when a person bought a thing which did not have a potential existence, it was presumed that he did assume the risk of its not becoming existent. Thus, it is evident that the Roman law’s distinction between emptio spei and emptio rei speratae is explicable on the theory of risk of loss.”
 

 A contract conveying a mineral royalty cannot be considered as a sale of a thing having a potential existence, i. e., something which might be expected in the ordinary course of events to come into being. If it could be so considered, it would be the kind of agreement provided for in Civil Code, Article 2450 reading:
 
 “A
 
 sale is sometimes made of a thing to come; as of what shall accrue from an estate, of animals yet unborn, or such like other things, although not yet existing.” And under such an agreement the purchaser would be entitled to a return of the price paid in the event of failure to produce the minerals. Losecco v. Gregory, 108 La. 648, 32 So. 985.
 

 Rather the mineral royalty contract can only be treated as the sale of something not having a potential existence — the sale of an uncertain hope. This is so because, as is universally recognized, the exploration for minerals is very costly, as a result of which it is often difficult to find someone financially able and willing to conduct drilling operations; also, the obtaining of production, even after the commencement of the drilling operations, is exceedingly uncertain, highly speculative. What the purchaser acquires therefore is the hope that exploration or drilling will take place on the land affected by his royalty, together with the additional hope that it will be successful, thereby affording him the privilege of sharing in the production.
 

 When royalty is sold, as the purchaser knows, the landowner does not obligate himself either to develop the land or to lease to a third person for exploration purposes. But the purchaser also knows that it is to the landowner’s interest to lease the property on as favorable terms as he can in order to obtain a bonus, delay rentals, and possibly drilling with resulting royalties from production; and it is this knowledge which furnishes him the hope of gain from the royalty purchase and justifies his paying for it.
 

 Through the confection of the sale the purchaser has hazarded the price of the royalty upon the occurrence of a chain of uncertain events in the forging of which he plays no part. He has, as it were, bet his money that the landowner will want to lease his land for the production of minerals; that such owner obtains a lessee who is financially able to and will commence soon and prosecute diligently operations for the production of minerals; and that such operations will prove successful. He has bought an interest in what may be caught if and when the net is cast, but he has nothing to do with the net’s casting or with deciding when it will be cast.
 

 Moreover, the rights of the purchaser under the acquired royalty are complete
 
 *315
 
 (the hope of gain commences) when the act of sale is executed, at which, time also the obligations of the seller are satisfied. Accordingly, the purchaser is not entitled to a return of the price paid if the uncertain hope purchased, produces no gain. Losecco v. Gregory, supra.
 

 And since there is an unconditional, completed sale on the signing of the deed, prescription liberandi causa necessarily commences to run at that time. But which one of the several specific prescriptions included in that general classification is applicable? This question was not answered in the Vincent case, although a prescription of ten years was there applied to a mineral royalty.
 

 In Section 3 of Chapter 3 of Title XXIII of our Code are found the articles, 3528 through 3555, which treat “Of the Prescription which Operates a Release from Debt”, —the general classification above referred to as prescription liberandi causa. The first five articles in that section, 3528 through 3533, are general in nature and relate to all of the liberative prescriptions. The remaining articles are grouped in paragraphs, each of the first five of which concerns a specific prescription, and the last or sixth furnishes only rules. The specific prescriptions dealt with by the first five paragraphs are respectively the following: Paragraph 1, Article 3534 through Article 3537 — of one year; Paragraph 2, Articles 3538 and 3539 — of three years; Paragraph 3, Article 3540 through Article 3543 — of five years; Paragraph 4, Article 3544, through Article-3547 — of ten years; Paragraph 5, Article 3548 — of thirty years.
 

 From a casual reading of the articles dealing with the specific prescriptions of' one, three and five years, it is clear that none of them is applicable to a mineral: royalty right.
 

 Neither can there be applied, in my opinion, the provision which deals with the prescription of thirty years, it reading: “Article 3548 * * * All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty-years.” Although a royalty interest is a real right, a real obligation, a suit to establish the right or have it recognized would not be an action for an immovable-within the intendment of that article. As-before shown, it is not a jus in re; it is, merely a jus ad rem. It is only a right attached to the ownership of the immovable-to share in production if and when obtained.
 

 This being true, there is left for consideration the articles dealing with the specific prescription of ten years, only two-of which could possibly be pertinent. One-of these is Article 3546, reading: “The-rights of usufruct, use and habitation and servitudes are lost by nonuse for ten years”. This article can not apply, however, because an owner of each of the rights therein referred to has some control or management over the property affected; a mineral royalty owner has none.
 

 
 *316
 
 But the other article is applicable, I think, and provides the specific liberative prescription governing a mineral royalty. It reads: “Article 3544 * * * In general, all personal actions, except those before enumerated, are prescribed by ten years.” When a mineral royalty holder sues to establish his interest, the claim asserted is only for recognition of the right •to share in the production resulting or which may result from successful exploration on the land. Thus, his suit is a personal action, although the interest on which the litigation is predicated is a real right or obligation (since it was stipulated to run with the land). It is not and cannot be considered as a real action in the sense of being a suit to recover an immovable.
 

 This difference is made clear by our decision in Da Ponte v. Ogden et al., 161 La. 378, 108 So. 777, 781. Therein plaintiffs .sued to recover an undivided % interest in certain lands, and they coupled with the action a demand for an accounting of all funds received by the defendants from the land by way of royalties from oil or other •minerals. One of the defenses urged was a plea of prescription of ten years based on Civil Code, Article 3544. In disposing of the plea this court said:
 

 “The action is a mixed action. It partakes in its nature the character of both a real and a personal action.
 

 “It is a real action in so far as it seeks .to recover an undivided interest in the lands and to compel defendants to execute title. It is personal in so far as it calls on defendants t'o account for and pay over one-sixth of the royalties received from said land.
 

 “Article 3548, Civil Code, provides that all actions for immovable property are prescribed by 30 years. The case clearly falls within the terms of this article of the Code. The purpose of the action is to recover an interest in an immovable, based on an agreement to sell, and to compel defendants to comply with that agreement by the execution of a ideed. It is apparent, therefore, that that part of the demand is a real, and in no sense a personal, action.
 

 “The demand for the return of money had and received is in the strict sense a personal action, subject to the prescription of 10 years. * * * ”
 

 The doctrine of the Da Ponte case was inferentially approved in Parker et al. v. Ohio Oil Co., 191 La. 896, 186 So. 604, decided on the same date as Vincent et al. v. Bullock et al., supra. In holding that the prescription of three years was applicable to an action between the lessee and lessor for the proceeds of royalties under an oil and gas lease, the court distinguished the Da Ponte case 'by showing that in it there did not exist the relationship of lessor and lessee.
 

 By analogy there are numerous other cases in our jurisprudence which support
 
 *317
 
 the conclusion that a mineral royalty, although a real right in that it affects the land, is governed by Article 3544 which provides for the prescribing of a personal action by ten years. Thus, that prescription was held to apply in R. E. E. DeMontluzin Co., Ltd., v. New Orleans & N. E. R. Co., 166 La. 822, 118 So. 33 (an action of a vendor under a contract authorizing recovery of land on railroad’s failure to construct a station pursuant to an agreement to that effect) ; in Louisiana Oil Refining Corporation v. Gandy, 168 La. 37, 121 So. 183, Snelling v. Adair, 196 La. 624, 199 So. 782, and Haas et al. v. Opelousas Mercantile Co., Ltd., 197 La. 500, 2 So.2d 3 (actions to reform deeds affecting immovables) ; in Bandel v. Sabine Lumber Co., 194 La. 31, 193 So. 359 (an action by purchaser of immovables against defaulting vendor to recover illegally diverted fruits and revenues) ; and in Louisiana Truck & Orange Land Co., Ltd., v. Page, 199 La. 1, 5 So.2d 365 (an action to set aside a sale of realty for nonpayment of the purchase price).
 

 For these reasons I concur in the holding herein, which is predicated primarily on the decision in the Vincent case, that the mineral royalty in question was not a servitude such as would render applicable the provisions of 'Civil Code, Article 802, and that it, except as to the interest of the minor Janet Russell Sirles, was lost by the operation of the prescription of ten years liberandi causa.