300 So.2d 632 (1974)
Aubrey J. BOURGEOIS et al.
v.
EXXON CORPORATION.
No. 5599.
Court of Appeal of Louisiana, Fourth Circuit.
June 26, 1974.
Rehearing Denied October 9, 1974.
Writ Refused November 22, 1974.
*633 James R. Pertuit, New Orleans, for plaintiffs-appellants.
Bernard J. Caillouet, H. H. Hillyer, III, Milling, Benson, Woodward, Hillyer & Pierson, New Orleans, for defendant-appellee.
Before GULOTTA and BOUTALL, JJ., and WICKER, J. Pro Tem.
THOMAS C. WICKER, Jr., Judge Pro Tem.
This is an action for termination of mineral leases for nonpayment of production royalties. Plaintiffs, owners in indivision of mineral interests on certain property, seek a declaration of termination of the mineral leases held by Humble Oil & Refining Company, now doing business as Exxon Corporation. The trial court maintained a peremptory exception of prescription and dismissed plaintiffs' suit. From this adverse judgment plaintiffs appeal.
The issues on appeal relate to the question of whether plaintiffs have stated a cause of action in seeking a declaration of termination of the leases and, if they have stated a cause of action, whether it has prescribed.
The record shows that plaintiffs, as owners of certain mineral interest, granted two mineral leases to a third party, who, in turn, assigned them to Humble. In accordance with the terms of the two leases, Humble made royalty payments to plaintiffs for oil and gas production until April, 1946. On April 13, 1946 the Commissioner of Conservation of the State of Louisiana issued a unitization order involving the leases in question.[1] Plaintiffs opposed the order of the Commissioner and refused to sign the division order presented by Humble as operator for the entire unit. Plaintiffs failed to execute the division order for a period of forty-three months. During this period, Humble refused to pay plaintiffs royalties due them on production attributable to their acreage.
Humble continued to operate production on the unit and plaintiffs finally capitulated to the division orders in November, 1949. Humble then paid all royalties that had accrued in their favor from the forty-three months between April, 1946 and November, 1949, and Humble has since continued to pay royalties to plaintiffs as stipulated in the leases.
On the basis of the foregoing undisputed facts, plaintiffs filed suit on April 20, 1972, seeking a "declaration of termination" of the mineral leases as of April 3, 1946. Plaintiffs' claim that Humble's failure to pay royalties between April, 1946 and November, 1949 amounted to "an active breach which terminated the leases as of April 3, 1946, without the necessity of putting Humble in default." Additionally, plaintiffs demand an accounting for all proceeds from the production of oil and gas attributable to their acreage after April 3, 1946, as opposed to the percentage royalty under the leases.
Defendant Humble responded with a peremptory exception based on the arguments that plaintiffs stated no cause of action and, if they did state a cause of action, it had prescribed.
After receiving briefs and hearing argument on the exception, the trial court rendered judgment in favor of defendant, maintaining the peremptory exception of prescription and dismissing plaintiffs' suit. The court fully explained its reasons for judgment in a lengthy, well-reasoned opinion, which has merited our careful consideration. *634 The judge concluded that under the jurisprudence of this state there is no cause of action for a decree that a lease "terminated automatically as of a given date in the past solely on the basis of an alleged active breach by the lessee in failing to pay production royalties." As a result, he concluded that plaintiffs' demand could only be viewed as one for "present cancellation" of the leases, effective as of some date in the past, which raises the issue of prescription.
With regard to prescription, the trial judge concluded that an action for cancellation of a mineral lease for alleged nonpayment of production royalties is an action to dissolve a contract on the basis of an implied resolutory condition, which would be classified as a personal action barred by ten year prescription under LCC art. 3544. Due to the fact that the present suit was filed twenty-six years after the alleged breach, the peremptory exception of prescription was maintained. With this analysis of the trial court, we cannot disagree.
Plaintiffs argue that Humble's failure to pay royalties constituted an active breach which terminated the leases ipso facto. As a result, plaintiffs claim that their suit does not seek a present cancellation of the leases, which presumably would have prescribed. Plaintiffs base this argument almost exclusively on the following statement in the recent Louisiana Supreme Court opinion in Bouterie v. Kleinpeter, 258 La. 605, 247 So.2d 548, 553 (1971):
"Where royalties are concerned, since no stipulated date for payment is set, the jurisprudence is to the effect that failure to pay production royalties for any appreciable length of time without justification amounts to an active breach which terminates the lease without the necessity of putting in default."
Plaintiffs intimate that this language in Bouterie altered the course of prior jurisprudence, which required a putting in default as a prerequisite to cancellation of leases.
Examination of the prior jurisprudence and the Bouterie case, itself, reveals that this language in Bouterie does not alter the theory running through the earlier precedents. First, the statement in Bouterie is merely dictum, unnecessary to the court's decision that the notice provision of the particular lease did not apply to the failure to timely pay royalties. Second, the statement of the court does not purport to change the prior jurisprudence; in its assertion, "(w)here royalties are concerned... the jurisprudence is to the effect that ...", it expressly attempts to restate the theory of the prior jurisprudence (emphasis added).
Finally, the language of the Bouterie statement is virtually the same as that found in the prior precedents on point, all of which assert a theory of judicial cancellation, not a theory of automatic termination, of mineral leases for nonpayment of production royalties. See Bollinger v. Texas Co., 232 La. 637, 95 So.2d 132, 136-137 (1957); Melancon v. Texas Co., 230 La. 593, 89 So.2d 135, 143 (1956); Fontenot v. Sunray Mid-Continent Oil Co., 197 So.2d 715, 718 (La.App. 3rd Cir. 1967); Sellers v. Continental Oil Co., 168 So.2d 435, 437 (La.App. 3rd Cir. 1964); Fawvor v. U. S. Oil of La., 162 So.2d 602, 607-608 (La.App. 3rd Cir. 1964); Pierce v. Atlantic Refining Co., 140 So.2d 19, 29 (La.App. 3rd Cir. 1962); Bailey v. Meadows, 130 So.2d 501, 508 (La.App. 2nd Cir. 1961). Additionally, the cases that have followed Bouterie speak in terms of judicial cancellation and not automatic termination. See Alvord v. Sun Oil Co., 271 So.2d 561, 566 (La.App. 2nd Cir. 1972); Wilson v. Sun Oil Co., 265 So.2d 344, 346 (La.App. 1st Cir. 1972).
The concept of automatic termination of mineral leases has been applied by the courts only where invoked by the express terms of leases or where delay rentals (rental payments having an express due *635 date) are involved. See Bouterie, supra, 247 So.2d at 553 (the court states that when a lessee fails to pay the rent on or before the due date, the lease "terminates automatically"); Comment, 24 La.L.Rev. 618, 624-26 (1964) (distinguishes between delay rentals and production royalties in mineral leases). As stated aptly by the trial judge in his reasons for judgment, the idea of automatic termination of a mineral lease for nonpayment of production royalties, as distinguished from nonpayment of delay rentals, may well have been developed by astute counsel for plaintiffs in an effort to avoid the issue of prescription.
Although we hold that plaintiffs' suit for a decree of automatic termination does not state a cause of action for which relief can be granted, we can construe the suit as one stating a cause of action for present cancellation as of a particular date in the past. See Fontenot v. Sunray Mid-Continent Oil Co., 197 So.2d 715, 722 (La. App. 3rd Cir. 1967).
This cause of action, however, runs afoul of the prescriptive articles of the Louisiana Civil Code in that this suit was filed on April 20, 1972 and it complains of a breach committed between April, 1946 and November, 1949. This action for cancellation of the mineral leases for alleged nonpayment of production royalties constitutes an action to dissolve a contract for the occurrence of an implied resolutory condition, a personal action which would prescribe in ten years. L.C.C. art. 3544.
Plaintiffs' demand for an accounting of the proceeds of all oil and gas production is deemed to be ancillary to the main demand and fails on the same rationale. See e. g., Williams v. Humble Oil & Refining Co., 432 F.2d 165, 170 (5th Cir. 1970); Da Ponte v. Ogden, 161 La. 378, 108 So. 777, 781 (1926).
We, therefore, affirm the trial court judgment and dismiss plaintiffs' appeal at their cost.
NOTES
[1] The Commissioner of Conservation has the power to create a single unit out of many separately owned tracts of land, for purposes of conservation and economy, such that a single party could operate production on the particular unit. In the case at bar, plaintiffs' interests became part of a larger unit to be operated by plaintiffs' lessee, Humble.